*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MONTEZ STOVALL,

      Defendant-Appellant.

FOR PUBLICATION
November 5, 2020

No. 342440
Wayne Circuit Court
LC No. 92-000334-01-FC

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

GLEICHER, P.J. (*dissenting*).

In 1992, the prosecution charged Montez Stovall with one count of first-degree murder, one count of second-degree murder, and two counts of felony-firearm. Stovall was 17 years old. He faced a mandatory sentence of life imprisonment without the possibility of parole if convicted of first-degree murder.

To avoid the imposition of a life-without-parole sentence, Stovall pleaded guilty to two counts of second-degree murder and the felony-firearm charges. At the guilty plea hearing, Stovall's counsel stated, "I've advised him that the statute permits the Parole Board to consider him for probation [sic] at the end of ten years. On this type of life sentence, after ten years." Counsel's advice was consistent with the law then in effect, which provided that Stovall would be eligible for parole consideration after serving 10 years. MCL 791.234(7)(a).

Stovall's sentencing guidelines were scored in preparation for his sentencing; the calculated minimum sentence ranged from 144 to 300 months, with the maximum being life. Under MCL 750.317, the court alternatively could have sentenced Stovall to "imprisonment in the state prison for life, or any term of years[.]" The judge imposed a life sentence rather than a guidelines sentence. The life sentence permitted Stovall to be considered for parole after serving 10 years. A guidelines sentence would have delayed his parole eligibility to 12 years of incarceration.

In the 28 years that have elapsed since Stovall entered prison, two changes have undermined the legal foundation for Stovall's sentence. The first was evolutionary. Over time, it became progressively more difficult for an inmate convicted of second-degree murder to obtain

-1-

parole. In 1992, the Legislature extended the amount of time that must be served before eligibility for parole consideration from 10 to 15 years. MCL 791.234(7)(a).[1] In 1997, the parole board chairperson announced that for the parole board, "life means life":

> It has been a long standing philosophy of the Michigan Parole Board that a life sentence means just that—life in prison. Of course there are exceptions and parole may be appropriate under certain circumstance. It is the parole board's belief that something exceptional must occur which would cause the parole board to request the sentencing judge or Governor to set aside a life sentence. Good behavior is expected and is not in and of itself grounds for parole. [Citizens Alliance on Prisons and Public Spending, *No Way Out: Michigan's Parole Board Redefines the Meaning of "Life"* (2004), p 10 (ellipsis omitted), available at <https://static.prisonpolicy.org/scans/cappsmi/fullliferreport.pdf]/> (accessed September 30, 2020).]

In 1999, the Legislature eliminated a prisoner's right to appeal a parole denial. MCL 791.234(11). Subsequent statutes tightened parole procedures, making it more difficult for a prisoner to enter even the initial steps of the process. See MCL 791.234(8). As a result of these legislative overhauls, Michigan's parole system now affords virtually unbridled discretion to politically appointed parole board members and the sentencing judge. See Citizens Alliance on Prisons and Public Spending, *Parolable Lifers in Michigan: Paying the Price of Unchecked Discretion* (2014), available at <https://www.prisonpolicy.org/scans/cappsmi/Parolable-Lifers-in-Michigan-Paying-the-price-of-unchecked-discretion.pdf> (accessed September 30, 2020).[2] In *People v Carp*, 298 Mich App 472, 533-535, 828 NW2d 685 (2012), rev'd on other grounds, 499 Mich 903 (2016), this Court acknowledged that a parolable life sentence likely results in lifetime imprisonment.

Stovall has been incarcerated for 28 years and has not been granted even a single interview, the preliminary step to parole eligibility. Nor have his parole guidelines been scored. Although the statute underlying his guilty plea permitted parole review in 10 years, 28 years have passed without a formal review and, according to the record, Stovall will wait at least another three years for an opportunity for parole consideration.

The changes in the law and the parole board's approach, standing alone, do not afford Stovall a legal ground for withdrawing his guilty plea or being resentenced. See *Jones v Dep't of Corrections*, 468 Mich 646, 651; 664 NW2d 717 (2003) ("A prisoner enjoys no constitutional or

---

[1] This change does not apply to Stovall, who remained eligible for parole consideration after serving 10 years.

[2] For an overview of the changes in Michigan's parole system, see also *Foster v Booker*, 595 F3d 353, 358-359 (CA 6, 2010) (summarizing that statutory amendments "(1) altered the structure and composition of the Board; (2) reduced the frequency of parole reviews after an initial ten-year interview; (3) substituted paper reviews for in-person interviews; (4) eliminated [prisoners'] right to appeal a denial of parole; and (5) contained new language consistent with the Board's practice of not giving written reasons for a statement of 'no interest' in moving forward with parole").

inherent right to be conditionally released from a validly imposed sentence."). In combination with a much more dramatic change, however, the shift in parole processes invalidates Stovall's sentence and compels a resentencing hearing.

In 2012, the United States Supreme Court held in *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), that a mandatory sentence of life imprisonment without the possibility of parole violates the Eighth Amendment's prohibition of "cruel and unusual punishments" when imposed on an offender who had not reached the age of 18 at the time of his crime. The Supreme Court imbued *Miller* with retroactive effect in *Montgomery v Louisiana*, ___ US __; 136 S Ct 718; 193 L Ed 2d 599 (2016).

Because "youth matters" in determining whether lifetime incarceration without the possibility of parole is warranted, "criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Miller*, 567 US at 473-474 (quotation marks and citation omitted). "*Miller* requires that before sentencing a juvenile to life without parole, the sentencing judge take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Montgomery*, 136 S Ct at 733 (quotation marks and citation omitted). A mandatory life imprisonment sentence precludes the individualized consideration that *Miller* and the Eighth Amendment demand and is therefore unconstitutional. Ultimately, *Miller* instructs that a juvenile homicide offender must be afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Miller*, 567 US at 479 (quotation marks and citation omitted).

Stovall was sentenced to an ostensibly parolable term of life imprisonment that should have afforded him a meaningful opportunity to obtain release if he demonstrated personal growth and positive change. But his plea and sentence were predicated on two misconceptions, one legal and the other factual: that he would be imprisoned for life without possibility of parole if convicted of first-degree murder, and that he would have a genuine opportunity for parole after serving 10 years of a parolable life sentence.

Legally, had Stovall been convicted of or pleaded to first-degree murder, he would have been sentenced to a mandatory term of life imprisonment without parole. But post-*Miller*, likely he would have been automatically eligible to be resentenced to a minimum term of no less than 25 years and no more than 40 years' imprisonment. See MCL 769.25a(4)(c). Factually, if Michigan's parole system functioned in the manner envisioned by the Legislature when it enacted the version of MCL 791.234(7) applicable to Stovall, he would have been considered for release by now, if not paroled. Instead, Stovall is serving a de facto sentence of life in prison without the possibility of parole, with no reasonable ability to demonstrate that he has matured and been rehabilitated.

A sentence is invalid if it is "based upon . . . a misconception of law . . . ." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). In my view, the factual misconception at the heart of Stovall's appeal magnifies the injustice of the legal misconception. In two cases somewhat analogous to this one, our Supreme Court has identified a misconception of law necessitating a new sentencing hearing. In *People v Turner*, 505 Mich 954; 936 NW2d 827 (2020), the defendant was convicted of first-degree murder at age 16 and sentenced to life without parole. *People v Turner*, unpublished opinion of the Court of Appeals, issued May 17, 2018 (Docket No 336406), unpub op at 1. He was also convicted of assault with intent to commit murder and sentenced to life

imprisonment with the possibility of parole, the same sentence that Stovall received. *Id*. Invoking *Miller* and *Montgomery*, Turner sought resentencing on both his first-degree murder sentence and his AWIM sentence. This Court held that he was not entitled to be resentenced for AWIM "because the retroactive change in law did not apply to the AWIM sentence." *Id*. at 3.

The Supreme Court reversed, explaining that Turner's AWIM sentence could not stand because "[i]n the *Miller* context, a concurrent sentence for a lesser offense is invalid if there is reason to believe that it was based on a legal misconception that the defendant was required to serve a mandatory sentence of life without parole on the greater offense." *Turner*, 505 Mich at 954-955. The Court directed that at Turner's *Miller* resentencing, the trial court could exercise its discretion to resentence Turner for his AWIM conviction "on a concurrent sentence if it finds that the sentence was based on a legal misconception that the defendant was required to serve a mandatory sentence of life without parole on the greater offense." *Id*. at 955.

And in *People v Williams*, ___ Mich ___; 940 NW2d 75 (2020), the defendant was convicted as a juvenile of both first and second-degree murder, and sentenced to life without parole and parolable life, respectively. *People v Williams*, 326 Mich App 514, 517; 928 NW2d 319 (2018). This Court held that Williams was not entitled to resentencing for second-degree murder. *Id*. at 521. As in *Turner*, the Supreme Court remanded for consideration of "whether the sentence for second-degree murder was based on a legal misconception that the defendant was required to serve a mandatory sentence of life without parole for first-degree murder. If so, the trial court may exercise its discretion to resentence the defendant for second-degree murder." *Williams*, ___ Mich at ___.

The majority holds that *Williams* is simply inapposite here, as Stovall "was not facing a mandatory life sentence" and *Miller* does not apply to a parolable life sentence for second-degree murder. I disagree for two reasons. First, Stovall *was* facing a mandatory sentence of life without parole. His plea to second-degree murder was based on the legal misconception that if convicted of first-degree murder by verdict or plea, he would serve a mandatory sentence of life without parole. Accordingly, the reasoning of the orders in *Williams* and *Turner* governs this case.

Second, and aside from the legal misconception at the heart of Stovall's sentence, as a juvenile convicted of first-degree murder, Stovall was and is entitled to a sentencing process focused on any individualized circumstances mitigating his crimes as mandated by *Miller*. The record reflects a host of such circumstances, including severed childhood abuse and neglect. With his background taken into account, *Miller* counsels that Stovall's sentence must offer him a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" unless a judge determines that Stovall is irreparably corrupt. *Miller*, 567 US at 479 (quotation marks and citation omitted).

In 1992, Stovall and his counsel bargained for a sentence that would allow Stovall the ability to work toward his freedom. They believed that parole eligibility would undercut the harshness of a life sentence and offered Stovall a rational hope for release. They fundamentally misconceived two things: that a parolable life sentence was preferable to a nonparolable life sentence, and that Michigan's parole system would allow Stovall to actually demonstrate his growth and rehabilitation. Stovall's sentence was predicated on fundamental legal and factual misunderstandings. Due to the misconception that Stovall's parolable life sentence offered him a

-4-

realistic opportunity to demonstrate maturity and rehabilitation, Stovall is now serving a functional life sentence without parole in violation of *Miller*.

Ironically, Stovall has fared worse than he would have if convicted of first-degree murder and sentenced to life without parole. In that circumstance, he would have had a right to an individualized resentencing hearing at which he would be able to demonstrate his own growth and evolution, and his worthiness for parole. Instead, he has no meaningful opportunity for release before he is elderly. Stovall now serves a life sentence that is parolable in name only, and therefore violates the central precepts of *Miller*.

The unlikely chance that he will ever appear before a parole board disinterested in evaluating Stovall's diminished moral culpability at the time he committed the crimes, the "wealth of characteristics and circumstances attendant to" his youth, and the harshness of a functional life sentence, *Miller*, 567 US at 476, is not a substitute for a *Miller* hearing. Uncertain, unpredictable, and unlikely parole does not substitute for factoring in on the "front end" a juvenile's lessened culpability. Because Stovall's sentence rests on a misconception of the law and facts that undercut the sentence's constitutionality, I would remand for a resentencing hearing consistent with *Miller*.

/s/ Elizabeth L. Gleicher